UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GARY L. FRANCIS,

                                  Plaintiff,

                   - against -                          **OPINION & ORDER**

JOHN M. NICHOLS, ESQ., JENNIFER M.S.              No. 16-CV-1848 (CS)
BYRNE, ESQ., THE BANK OF NEW YORK
MELLON, ROBERT G. HALL, and ANISSA
HICKERSON,

                                  Defendants.
-------------------------------------------------------------------x

Appearances:

Gary L. Francis
New Rochelle, New York
*Plaintiff* Pro Se

Robert A. Barrer, Esq.
Barclay Damon, LLP
Syracuse, New York
*Counsel for Defendants*

Seibel, J.

       This action arises out of a state court proceeding that resulted in the foreclosure of Plaintiff Gary L. Francis's home (the "Foreclosure Action"). Before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint of John M. Nichols, Jennifer M.S. Byrne, Bank of New York Mellon ("BNY Mellon"), Robert G. Hall, and Anissa Hickerson (collectively "Defendants"). (Doc. 26.) For the reasons set forth below, Defendants' Motion is GRANTED.

1

## I. BACKGROUND

### A. Facts

I accept as true the facts, but not the conclusions, as set forth in Plaintiff's Second Amended Complaint ("SAC"). (Doc. 40.)[1]

The Foreclosure Action arose out of Plaintiff's mortgage on his property at 543 Main Street, Unit #211, New Rochelle, New York, 10801 (the "Property"). (SAC ¶ 22; *id.* Ex. C, at 4.) On June 23, 2006, Plaintiff executed a promissory note (the "Note"), promising to pay BNY Mortgage Company LLC a principal amount of $237,744. (*Id.* Ex. B, at 1.) The Note was secured by a mortgage on the Property (the "Mortgage"), signed on the same date. (*Id.* ¶ 22; *id.* Ex. C, at 2.) The Mortgage lists BNY Mortgage Company LLC as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") "as a nominee for Lender and Lender's successors and assigns." (*Id.* Ex. C, at 2.) The Mortgage further provides that "for purposes of recording this mortgage, MERS is the mortgagee of record." (*Id.*)

On November 21, 2012, Westchester County recorded an October 29, 2012 assignment (the "Assignment") of the Mortgage from MERS, "acting solely as nominee for BNY Mortgage Company, LLC," to BNY Mellon. (*Id.* Ex. D, at 1-2.) The Assignment was signed by Defendant Robert G. Hall, "Assistant Secretary," and notarized by Defendant Anissa Hickerson. (*Id.* Ex. D, at 2.)

Plaintiff's handwriting expert in the Foreclosure Action opined that differences between Hall's signatures on thirteen documents indicated that they were made by "multiple authors."

---

[1] Plaintiff attaches a number of documents to the SAC that relate to the underlying state court action. I may properly consider these exhibits because they were attached to the SAC. *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (district court may consider documents attached to complaint on motion to dismiss).

2

(*Id.* Ex. F, ¶¶ 7, 11.)  Plaintiff also alleges that MERS had no authority to execute the Assignment because BNY Mortgage Company, LLC "became a living dead corporation on September 30, 2008."  (*Id.* ¶ 24.)  Plaintiff cites a printout of the New York Department of State that lists BNY Mortgage Company, LLC's status as "INACTIVE – Merged Out (Sep 30, 2008)." (*Id.*; *id.* Ex. E, at 1.)  Plaintiff concludes that the Assignment was "manufactur[ed]" and "backdate[ed]" for the purpose of initiating the Foreclosure Action.  (*See id.* ¶ 32.)

On December 6, 2012, Defendant BNY Mellon, through its counsel, Defendant Byrne, filed the Foreclosure Action in the Supreme Court of New York in Westchester County.  (*Id.* ¶ 20.)  The complaint in the Foreclosure Action alleged that Plaintiff stopped making payments on the Note and Mortgage on February 1, 2011, (*id.* Ex. A, ¶ 9), and attached a copy of the Note and the Mortgage, (*id.* ¶¶ 21, 22), along with the Assignment purporting to grant BNY Mellon the right to foreclose the Mortgage, (*id.* Ex. A, ¶ 7).  On October 29, 2015, the state court granted summary judgment in favor of BNY Mellon, and entered judgment on November 2, 2015.  (*Id.* ¶ 27.)

On January 21, 2016, Plaintiff moved to vacate the judgment of foreclosure and sale based on "fraud upon the court."  (*Id.* ¶ 28.)  The alleged fraud consisted of BNY Mellon's wrongful reliance on the allegedly fraudulent Assignment to establish its standing in the Foreclosure Action.  (*See* Doc. 28 ("Nichols Decl.") Ex. 6, at 3.)[2]  The state court denied the motion to vacate on February 10, 2016.  (SAC ¶ 28.)  On February 17, 2016, Plaintiff filed a notice of appeal of the state court's denial of his motion to vacate.  (*Id.* ¶ 29.)  On February 22, 2016, Plaintiff moved to stay the judgment of foreclosure and sale pending appeal, with a return date of March 11, 2016.  (*Id.* ¶ 30; *id.* Ex. G, at 1.)  On March 4, 2016, counsel for BNY Mellon,

---

[2] I may take judicial notice of publicly filed court documents (not for the truth of the matters asserted therein but for the fact that the statements were made).  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

3

Defendant Nichols, opposed the motion to stay, attaching a notice of the auction on the Property set for March 17, 2016. (*Id.* ¶ 31; *id.* Ex. H.)

Plaintiff alleges that as a result of the Foreclosure Action, he incurred expenses defending the action, and that the judgment of foreclosure and sale that was filed with the Westchester County Clerk "created a cloud upon title and made the subject property unmarketable." (*Id.* ¶ 33; *see id.* ¶¶ 78, 98.) He also alleges that the Foreclosure Action caused him to suffer emotional distress, (*see id.* ¶¶ 38, 97, 98), and seeks actual, statutory, and punitive damages, (*see id.* ¶¶ 39, 80, § VIII), as well as declaratory and injunctive relief, (*see id.* § VIII).

**B.  Procedural History**

On March 11, 2016, Plaintiff filed his *pro se* complaint, which asserted claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, violation of New York General Business Law ("GBL") § 349, and civil conspiracy, all based on an alleged conspiracy to falsify documents in the Foreclosure Action. (Doc. 1.) On April 11, 2016, Defendants submitted a pre-motion letter arguing that Plaintiff's claims failed because they were barred by the *Rooker-Feldman* doctrine, *res judicata* and/or collateral estoppel, and even if they were not barred, they failed to comply with Federal Rule of Civil Procedure 9(b). (Doc. 9.) On the same day, Plaintiff filed an Amended Complaint adding Defendants' counsel in this action, Mr. Charlton and Mr. Barrer, as defendants in this action. (Doc. 10.) On April 13, 2016, Defendants submitted a second pre-motion letter, arguing that the Amended Complaint failed for the same reasons the original complaint did. (Doc. 13.) On April 20, 2016, Plaintiff submitted a pre-motion letter responding that Mr. Barrer should withdraw as counsel because his representation of Defendants, while also being named in the Amended

4

Complaint, presented a conflict of interest. (Doc. 15.) Plaintiff also argued that his claims were not barred by *res judicata*. (*Id.*) On April 27, 2016, I held a pre-motion conference where we discussed Defendants' arguments for dismissal. I explained to Plaintiff that he needed to articulate why and how each defendant named in the Amended Complaint was involved in the alleged violations, and that his claims for conspiracy required more than merely alleging that Defendants participated in the Foreclosure Action. I also explained that he needed to serve a summons and Amended Complaint on each named defendant.

On May 27, 2016 Plaintiff filed the SAC, (Doc. 40), which removed Mr. Charlton and Mr. Barrer from the caption, and maintained Plaintiff's claims for violation of the FDCPA, RICO and GBL, and civil conspiracy. On June 20, 2016 Defendants filed the instant motion to dismiss the SAC. (Doc. 26.)

## II. DISCUSSION

### A. Legal Standard

1. <u>12(b)(1)</u>

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009). "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Id.* (citation omitted) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction

exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* (citations and internal quotation marks omitted).  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alteration, citations, and internal quotation marks omitted), *aff'd on other grounds*, 561 U.S. 247 (2010).  When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first.  *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

    2.  12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted),[3] and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## B. The *Rooker-Feldman* Doctrine

I will first address Defendants' *Rooker-Feldman* argument that this Court does not have subject matter jurisdiction over Plaintiff's claims.

> Pursuant to the *Rooker-Feldman* doctrine, federal district courts may not exercise subject matter jurisdiction over actions that seek appellate review of state court judgments. The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court

---

[3] The Court will send Plaintiff copies of all unpublished opinions cited in this ruling.

7

> judgments . . . unless otherwise provided by Congress.  This comity principle seeks to prevent state and federal courts . . . [from] fighting each other for control of a particular case.
>
> The Second Circuit has established four requirements for applying the *Rooker-Feldman* doctrine:  (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject that judgment; and (4) the state court must have rendered judgment before federal district court proceedings commenced.  Courts in this circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine.

*Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009) (citations and internal quotation marks omitted).

Here, the procedural elements of *Rooker-Feldman* are clearly met.  Plaintiff lost in the Foreclosure Action when the state court granted summary judgment to BNY Mellon and entered a judgment of foreclosure and sale, (SAC ¶ 27), and further when the state court denied his motion to vacate that foreclosure judgment, (*id.* ¶ 28).  And the state court judgment was entered on November 2, 2015, (*id.* ¶ 27), several months before Plaintiff filed the original complaint on March 11, 2016, (Doc. 1).

As to the substantive requirements, if the SAC

> merely complains of injuries caused by the state-court foreclosure judgment and seeks this Court's review and rejection of that judgment, then . . . this Court lacks subject matter jurisdiction over them.  The Second Circuit has explained that the requirement that a plaintiff's injuries be caused by the state judgment is the core requirement of the *Rooker-Feldman* doctrine.  Accordingly, *Rooker-Feldman* would not prevent Plaintiff[] from raising federal claims based on the same facts as a prior state case so long as the plaintiff complains of an injury *independent* of an adverse decision.  Such an independent claim is not barred by *Rooker-Feldman*, even if the claim denies a legal conclusion that a state court has reached in a case to which the plaintiff was a party.

*Davis v. JP Morgan Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *6 (S.D.N.Y. Mar. 30, 2016) (alterations and internal quotation marks omitted).

8

The injuries Plaintiff complains of – expenses in defending the foreclosure action, (SAC ¶ 33), the cloud on title created by the foreclosure action, (*id.* ¶¶ 33, 78, 98), emotional distress, (*id.* ¶¶ 38, 97, 98), and the auction of his home, (*See* Doc. 60 at 1) – were all undeniably caused by BNY Mellon instituting the Foreclosure Action.  And the cloud on title and the auction of the Property were directly caused by the resulting state court judgment, so those claims are barred by *Rooker-Feldman*.  *See Gonzalez v. Deutsche Bank Nat'l Trust Co.*, 632 F. App'x 32, 33-34 (2d Cir. 2016) (summary order) (*Rooker-Feldman* precludes claims based on "injuries caused by an adverse state-court judgment").  The cost of having to defend the Foreclosure Action and Plaintiff's emotional distress were caused at least in part by the institution of the Foreclosure Action, rather than by the state court judgment alone, and so would not necessarily be barred by *Rooker-Feldman*.  Providing redress for those injuries, however, necessarily requires this Court to find that BNY Mellon wrongfully asserted its standing to initiate the Foreclosure Action, a finding that is clearly barred by *Rooker-Feldman*.  *See id.* (*Rooker-Feldman* precludes claims arguing that defendant "lacked standing to pursue [plaintiff's] home's foreclosure in state court"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (*Rooker-Feldman* bars claims that "require the federal court to sit in review of the state court judgment").

Although the SAC speaks in terms of fraud and deception, Plaintiff has alleged only injuries either directly caused by the adverse judgment in the Foreclosure Action, or injuries the remedy for which would require this Court to revisit and reject the state court's determination that BNY Mellon had standing to pursue foreclosure.  *Compare Davis*, 2016 WL 1267800, at *8 (*Rooker-Feldman* did not bar claims for fraud based on defendants' pre-foreclosure conduct in sending plaintiff repeated collection notices, letters, and telephone calls despite knowing they

9

were not entitled to collect on note), *with Nath v. Select Portfolio Servicing, Inc. (Nath II)*, No. 15-CV-8183, 2017 WL 782914, at *8 (S.D.N.Y. Feb. 28, 2017) ("Although Plaintiff is careful to not directly challenge the validity of the State Court Foreclosure Judgment or argue that the state court judgment should be voided, his numerous claims of fraud unquestionably attack the soundness of that judgment.") (alterations, citation, and internal quotation marks omitted). Fraud claims are not barred by *Rooker-Feldman* if (i) they seek damages for injuries suffered from the alleged fraud and (ii) their adjudication "does not require the federal court to sit in review of the state court judgment." *Vossbrinck*, 773 F.3d at 427. Here, the deception and fraud of which Plaintiff complains and which allegedly caused his legal fees and emotional distress is that Defendants "manufactur[ed]" and "backdate[ed]" the Assignment and then submitted that allegedly fraudulent Assignment to the court in the Foreclosure Action, "with the sole intent of inducing the [state c]ourt [to allow D]efendants to improperly pursue foreclosure against [P]laintiff, with the intent to obtain a judgment of foreclosure and sale through fraudulent and false pretenses." (SAC ¶ 32.) Plaintiff claims injury from Defendants' use of the Assignment to assert standing to pursue the foreclosure judgment, and thus his claims are barred because they require this Court "to sit in review" of the state court's holding that BNY Mellon had standing. *Vossbrinck*, 773 F.3d at 427; s*ee Nath v. JP Morgan Chase Bank (Nath I)*, No. 15-CV-3937, 2016 WL 5791193, at *7 (S.D.N.Y. Sept. 30, 2016) ("Plaintiff does not articulate how he was injured by any of the allegedly void or invalid assignments or agreements apart from any role that they may have played in the State Court's decision to issue the State Court Foreclosure Judgment.").

Moreover, Plaintiff alleges that the foreclosure judgment "has created a cloud upon title and made the subject property unmarketable." (SAC ¶ 33.) But any injury resulting from a

"cloud" upon the title of the Property would be Plaintiff's to claim only if the foreclosure were overturned.  *See Nath I*, 2016 WL 5791193, at *7 ("[O]nly if the State Court Foreclosure Judgment is effectively overturned could Plaintiff possibly point to any injury resulting from the existence of various assignments and agreements that 'cloud' his title.").

At the heart of each of Plaintiff's claims is his challenge to BNY Mellon's standing to prosecute the Foreclosure Action.  (*See* SAC ¶ 23 (Defendant Byrne "falsely claimed that . . . [BNY Mellon] had standing to prosecute the foreclosure action"); *id.* ¶ 24 (Assignment was invalid because "MERS as the agent had no authority to execute the assignment of mortgage" because BNY Mortgage Company, LLC was an inactive company); *id.* ¶ 48(c) (scheme to defraud Plaintiff included using Assignment to demonstrate BNY Mellon had standing).)[4]  The state court, in issuing the judgment of foreclosure and sale, necessarily decided that BNY Mellon had standing.  (*See* Nichols Decl. Ex. 6, at 3 (Plaintiff's fraud allegation "even if accepted, in no way alters the prior adjudication that [BNY Mellon] is entitled to foreclose this mortgage").)  The state court rejected Plaintiff's arguments, and held that even were the Assignment invalid by reason of fraud, BNY Mellon's physical possession of the Note was sufficient to grant it standing to pursue foreclosure on the Property.  (*See id.* Ex. 6, at 4-5 (BNY Mellon's physical possession of the Note "is sufficient to establish [its] standing").)  Plaintiff's claims are thus a direct attack on the validity of the state court's determination that BNY Mellon had standing, and are barred by *Rooker-Feldman*.  *See Nath II*, 2017 WL 782914, at *6 ("Plaintiff's claims are therefore barred by *Rooker-Feldman* as they directly challenge the validity of the State Court Foreclosure Judgment by arguing Defendants lacked standing in that suit and therefore, the state court

---

[4] Indeed, Plaintiff indicated at the April 27, 2016 pre-motion conference that his claims in this federal action revolve around the allegedly "manufactured" Assignment from BNY Mortgage Company, LLC to BNY Mellon, and Defendants' use of that Assignment in the Foreclosure Action.

11

judgment should be voided.") (alterations and internal quotation marks omitted); *Gurdon v. Doral Bank*, No. 15-CV-5674, 2016 WL 721019, at * (S.D.N.Y. Feb. 23, 2016) (lack of standing, wrongful foreclosure, and fraudulent conversion claims fail because they "directly challenge[] the validity of the state court ruling by arguing Defendants lacked standing in that suit and, therefore, the state court judgment should be voided"), *report and recommendation adopted*, 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *Barbato*, 2016 WL 158588, at *3-4 (Plaintiff's FDCPA and fraud claims barred by *Rooker-Feldman* where "[i]n simplest terms, Plaintiff[] appear[s] to be arguing that Defendant lacked standing to foreclose or procured the foreclosure through fraudulent means").

Plaintiff's request for money damages, (SAC § VIII(A)-(F)), in addition to the request that this Court declare the Assignment void, (*id.* § VIII(G)), and enjoin the sale of the Property, (Doc. 60 at 1), might suggest the independence of Plaintiff's claims from the Foreclosure Action, *see Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149, 2012 WL 6827477, at *4 (E.D.N.Y. Dec. 6, 2012), *report and recommendation adopted*, 2013 WL 132719 (S.D.N.Y. Jan. 10, 2013).[5] "Reading the [SAC] as a whole, [however,] it is clear that [Plaintiff] disputes the validity of the underlying state foreclosure judgment," *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp.

---

[5] "Although a claim of fraud may preclude the Court from applying *Rooker-Feldman*, it does so only when the complaint 'does not attempt to reverse or undo a state court judgment.'" *Barbato v. U.S. Bank Nat'l Assoc.*, 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (quoting *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (summary order)). Plaintiff here is careful not to seek to "invalidat[e] the foreclosure judgment and return[] the property to" Plaintiff. *Id.* Instead, Plaintiff claims he is entitled to, among other things, money damages resulting from Defendants' alleged fraud and deceptive practices in the state court action. At least one court in this Circuit has found that *Rooker-Feldman* does not preclude a similar claim, where the plaintiff alleged that defendants "lied to the [state] court and engaged in 'intimidation.'" *Sylvester v. Bayview Loan Servicing LLC*, No. 15-CV-1736, 2016 WL 3566234, at *6 (S.D.N.Y. June 24, 2016). The *Sylvester* court seemed satisfied that it could adjudicate those claims without rejecting the state court's judgment, but I do not see how that is possible here. Even to the extent Plaintiff claims Defendants used similar tactics here, his claims center on Defendants' allegedly wrongful assertion of standing entitling them to pursue foreclosure. To find that Defendants were not so entitled, and that their wrongful assertion of standing caused Plaintiff's injury, would require that I review and reject the state court's holding that BNY Mellon *did have* standing, an inquiry which *Rooker-Feldman* precludes. In any event, even if Plaintiff's request for money damages is not precluded by *Rooker-Feldman*, it is barred by *res judicata*, as discussed below.

3d 491, 503 (S.D.N.Y. 2016), and that this dispute forms the sole basis for the SAC, (s*ee, e.g.*, SAC ¶ 31 ("[T]he evidence shows that the [foreclosure] judgment was granted based upon fraudulent documents and fraudulent information submitted to the Court."); *id.* ¶ 32 ("Defendants['] tortious conduct . . . have allowed defendants to improperly pursue foreclosure against plaintiff, with the intent to obtain a judgment of foreclosure and sale through fraudulent and false pretenses."); *id.* ¶ 33 ("As a result of defending the foreclosure, plaintiff has incurred expenses and . . . a cloud upon title . . . ."); *id.* ¶ 37 ("[F]iling and maintaining the frivolous foreclosure action and failing to withdraw the action when they were informed by plaintiff that the action was frivolous and opposing plaintiff's relief of stay pending appeal with the use of false statements and evidence" constitute deceptive practice under the FDCPA); *id.* ¶ 48 (drafting Assignment, submitting it to court to obtain foreclosure judgment, and scheduling auction for the Property constituted "a scheme to defraud plaintiff"); *id.* ¶ 78 (injury for RICO claim is causing Plaintiff to have to defend foreclosure action, clouding Plaintiff's title, and "wrongly foreclosing on his interest in his property"); *id.* ¶ 95 (Defendant Nichols joined conspiracy "when he sought and oppose[d] plaintiff's motion to vacate the summary judgment of foreclosure and sale for fraud upon the court and the court ruled in Nichols['s] favor")).

Even reading the SAC with the "special solicitude" afforded *pro se* plaintiffs, *Shibeshi*, 475 F. App'x at 808, Plaintiff has not pleaded any claims "the adjudication of which does not require the federal court to sit in review of the state court judgment," *Vossbrinck*, 773 F.3d at 427. For Plaintiff to succeed on his FDCPA claims, for example, I would need to find that Defendants' use of the Assignment in the Foreclosure Action was a deceptive practice because BNY Mellon in fact lacked standing to foreclose. Such a finding would necessarily call into question the validity of the state court's judgment, which found that BNY Mellon had standing to

13

pursue foreclosure.  (*See* Nichols Decl. Ex. 6, at 4-5.)  In other words, Plaintiff only suffered an injury from Defendants' alleged fraud if in fact BNY Mellon lacked standing, so Plaintiff could not prevail on his claims in this Court without a finding that the state court judgment was wrong.  Thus, even to the extent he seeks damages rather than declaratory or injunctive relief, Plaintiff is inviting this Court to "sit in review of the state court judgment." *Vossbrinck*, 773 F.3d at 427.  The damages claims are "intertwined with questions of whether Defendant[s] own[] the Note or the Mortgage," and are barred by *Rooker-Feldman*.  *Barbato*, 2016 WL 158588, at *4.

Defendants' motion is granted in full, and Plaintiff's claims are dismissed for lack of jurisdiction.

## C.  *Res Judicata*

Defendants argue that even if *Rooker-Feldman* does not preclude Plaintiff's claims, *res judicata* does.  (Doc. 34 at 6-8.)  I agree.

> The term *res judicata*, which means essentially that the matter in the controversy has already been adjudicated, encompasses two significantly different doctrines: claim preclusion and issue preclusion.  Under *claim preclusion*, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  The doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not.  The doctrine of *issue preclusion*, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015) (emphasis in original) (citations and internal quotation marks omitted).  "Federal courts must use the *res judicata* doctrine of the state in which the state court judgment was granted."  *Fequiere v. Tribeca Landing*, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016).  Because

the Foreclosure Action was in New York state court, I will apply New York's *res judicata* doctrine to the current motion.

"The doctrine of issue preclusion . . . precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . , whether or not the tribunals or causes of action are the same." *Id.* at *8 (internal quotation marks omitted). "The party invoking [issue preclusion] need not have been a litigant in the prior action." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 424 (S.D.N.Y. 2008). Issue preclusion requires that "(1) the identical issue was actually raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2015) (internal quotation marks omitted). "The party seeking to apply issue preclusion bears the 'burden of showing that the issues are identical and were necessarily decided in the prior action,' and the party opposing its application bears the 'burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues.'" *Fequiere*, 2016 WL 1057000, at *8 (quoting *Wyly*, 697 F.3d at 141).

First, the issue of BNY Mellon's standing to pursue foreclosure in the state action – which is the crux of all of Plaintiff's claims in this action – was actually raised and necessarily decided in the Foreclosure Action. Plaintiff filed a motion to vacate the judgment of foreclosure and sale, arguing that the Assignment was fraudulent and thereby vitiated BNY Mellon's standing to pursue foreclosure. (*See* Nichols Decl. Ex. 6, at 2-3.) *See Fequiere*, 2016 WL 1057000, at *9 (issue actually raised by virtue of plaintiff's asserting affirmative defenses in proposed answer attached to motion to reargue and amend answer). The state court denied

Plaintiff's motion because it found that, even had Plaintiff not waived this argument by virtue of his default, and even if the Assignment were indeed fraudulent, BNY Mellon's physical possession of the note would suffice to establish its standing to pursue foreclosure. (*See* Nichols Decl. Ex. 6, at 3-5.) Issue preclusion precludes relitigation of standing arguments based on allegedly fraudulent documents, even where the state court did not explicitly address the subsidiary issue of fraud. *See Nath I*, 2016 WL 5791193, at *9 (federal fraud claim precluded because alleged invalidity of assignments and nonexistence of entities in chain of assignments were addressed by state court). Further, in entering the foreclosure judgment and denying Plaintiff's motion to vacate that judgment, the state court necessarily found that BNY Mellon had standing to pursue foreclosure. *See id.* ("The issue of . . . [d]efendants' standing to foreclose on the loan was necessarily decided by the State Court when it issued the Foreclosure Judgment."); *Fequiere*, 2016 WL 1057000, at *9 ("In finding that [defendant] was entitled to foreclose on the Property, the state court implicitly and necessarily resolved the issues of . . . [defendant's] alleged lack of standing or rightful entitlement to the Property . . . ."); *Graham*, 156 F. Supp. 3d at 506 ("[I]t is clear that the issue of standing was necessarily decided by the state court because without deciding that U.S. Bank had standing, the foreclosure action could not have proceeded.").

Second, Plaintiff has not shown that he lacked a "full and fair opportunity to litigate" in the Foreclosure Action. *Wyly*, 637 F.3d at 141. Indeed, it is hard to imagine how he could, as "the state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Fequiere*, 2016 WL 1057000, at *9 (internal quotation marks omitted). It is of no moment that Defendants other than BNY Mellon were not parties to the Foreclosure Action. A party may raise issue preclusion so long as the party against

whom preclusion is sought had a full and fair opportunity to litigate the issue. *See id.* at *10 ("Though [defendant] was neither a party to the state court claims, nor in privity with a party in that action, the Second Circuit does not require mutuality of parties for issue preclusion."); *Deng v. Aramark Educ. Grp., Inc.*, No. 04-CV-453, 2006 WL 752826, at *6 (E.D.N.Y. Mar. 23, 2006) ("Under [issue preclusion], third parties unrelated to the original action may bar the litigant from relitigating the same issue in a subsequent suit."), *aff'd*, 253 F. App'x 84 (2d Cir. 2007).

Plaintiff's claims rest on his argument that BNY Mellon lacked standing to pursue foreclosure because the Assignment was fraudulent, an argument which he raised before the state court and which the state court rejected. Issue preclusion prevents Plaintiff from relitigating that issue before this Court.

## III.  LEAVE TO AMEND

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Where dismissal is based on jurisdictional or *res judicata* grounds, however, "the problem . . . is substantive [and] better pleading will not cure it." *MacKinnon v. City of N.Y.*, 580 F. App'x 44, 46 (2d Cir. 2014) (summary order) (internal quotation marks omitted). Here, Plaintiff should not be given another opportunity to amend "because any such amendment would be futile." *Gurdon*, 2016 WL 721019, at *10; *see Feliciano v. U.S. Bank Nat'l Ass'n*, No. 13-CV-5555, 2014 WL 2945798, at *7 (S.D.N.Y. June 26, 2014) (leave to amend denied "[b]ecause all of plaintiffs' claims fail as a matter of law . . . as any amendment would be futile").

Moreover, Plaintiff has already amended his complaint twice, (Docs. 10, 40), and has not asked to amend again or otherwise indicated he would have any ability to cure the deficiencies in

the SAC. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not *sua sponte* granting leave to amend where plaintiff had already amended complaint once and amendment would have been futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where problem with complaint is substantive and better pleading would not cure it).

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in full.[6]  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 26), and close the case.

**SO ORDERED.**

Dated: March 21, 2017
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[6] In light of my decision, I need not address Defendants' claim preclusion, Federal Rule of Civil Procedure 12(b)(6), and personal jurisdiction arguments, at least some of which appear to have merit.